UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAMERON D. GARNER, *et al.*,

        Plaintiffs,

v.

                              CASE NO.  2:13-cv-678
                              CHIEF JUDGE EDMUND A. SARGUS, JR.
                              MAGISTRATE JUDGE NORAH MCCANN KING

JESSICA HARROD, *et al.*,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 36). Plaintiffs filed a Response in Opposition (Doc. 46), to which Defendants have replied (Doc. 49). The Court finds all relevant issues have been fully briefed and are ripe for review.  For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

## I.      BACKGROUND

This case stems from a reported allegation of sexual abuse of a minor, and the criminal prosecution that ensued thereafter.  In February 2012, Defendant Jessica Harrod became concerned about statements her four-year-old son, A.M., made to her about inappropriate touching.  (*See* Doc. 36, Ex. D, Shawger Rep. at 1).  Specifically, A.M. allegedly indicated that "Pop Pop" had touched him on the penis, and that "Pop Pop" had also shown his own penis to A.M.  (*Id.*).  Harrod believed "Pop Pop" was a reference to A.M.'s step-grandfather, Plaintiff Cameron Garner.  (*Id.*).

After this discussion with her son, Harrod went to the Muskingum County Sheriff's Office on February 25, 2012 to report these allegations on behalf of A.M.  (*See id.*; Doc. 1,

Compl. at ¶ 33).  Deputy Brad Shawger was tasked with talking to Harrod about the alleged

incident.  Harrod relayed A.M.'s statements to Deputy Shawger.  (*See generally* Doc. 36, Ex. D,

Shawger Rep.).  She also informed him that she did not have a close relationship with her

mother, Plaintiff Christine Garner, or her step-father, Cameron Garner, and that A.M. therefore

did not have frequent contact with his grandparents.[1]  (*See id*. at 2).  However, Harrod reported

that A.M. would sometimes spend time with his great-grandparents, Plaintiffs Audrey and

Charles Moreland.  (*Id*.).  Harrod also informed the Deputy that A.M.'s great-grandmother,

Audrey Moreland, admitted that A.M. had visited the Garners on occasion, despite Harrod

forbidding Cameron Garner to have any contact with her son.  (*Id*.).

After receiving this information, Deputy Shawger contacted Muskingum County

Detective Fred Curry, who instructed Deputy Shawger to reach out to Muskingum County

Children Services ("MCCS").  (*See* Doc. 59, Shawger Depo. at 8).  An MCCS caseworker,

Mindy Darst, informed the Deputy that because Harrod and A.M. resided in Newark, Ohio, the

case should be referred to Licking County Children Services, not MCCS.  (*See* Doc. 33, Darst

Depo. at 33-35).  After relaying this information to Deputy Shawger, Darst contacted Licking

County Children Services ("LCCS") to make them aware of the situation and transfer the case.

(*Id*. at 34-37).

Three days later, LCCS caseworker Amy Reedy interviewed A.M. concerning the

reported sexual abuse allegations.  During the interview, only Reedy and A.M. were present.

(Doc. 58, Reedy Depo. at 112).  A.M. told Reedy that "Pap" had touched his penis.  (*Id*. at 126).

Reedy confirmed that "Pap" was A.M.'s nickname for Cameron Garner.  (*Id*. at 127).  Further,

---

[1] Harrod disclosed that she had not been close with her mother and step-father since 2003, when Cameron Garner
made sexual comments and engaged in inappropriate sexual behavior in Harrod's presence when she was a young
girl.  (*See* Doc. 36, Ex. D, Shawger Rep.; *see also* Doc. 36, Ex. A, MCSO Supp. Rep.).  Garner pled guilty to a
charge of Importuning as a result of his actions.  (*See* Doc. 36, Ex. C, Entry).

according to Reedy's report, during the course of the interview A.M. was able to accurately report his age, describe other relatives by their nicknames, and identify body parts on a body diagram. (*See* Doc. 36, Ex. E, Reedy Rep.). The interview was not video or audio recorded. (*See* Doc. 48, Reedy Depo. at 33 (explaining that she never recorded her interviews)).

Although the Muskingum County Sheriff's Office referred the case to LCCS to ensure the safety and wellbeing of A.M., it also continued with its own criminal investigation. On February 27, 2012, Detective Curry contacted Harrod to inform her that he would be investigating the reported sexual abuse allegations. (*See* Doc. 36, Ex. F, Curry Rep.). He then scheduled interviews with Audrey Moreland and Cameron and Christina Garner. (*See* Doc. 36, Ex. G, Curry Rep.; Doc. 36, Ex. H, Curry Rep.).

Detective Curry interviewed Audrey Moreland on February 29, 2012. (Doc. 36, Ex. G, Curry Rep.). According to his report, Moreland acknowledged that Harrod had tried to prohibit any contact between A.M. and Cameron Garner, but admitted that she had taken A.M. to visit the Garners, sometimes allowing him to stay overnight. (*Id*. at 1-2). Moreland also informed Detective Curry that A.M. refers to Christina Garner as "Nana" and Cameron Garner as "Pap." (*Id*. at 2). But Moreland expressed concerns over the truthfulness of the allegations. (*Id*. at 2). She reported that A.M. had been complaining that his penis and butt hurt for over a year, and that he'd been having other health issues. (*Id*.). She also told Detective Curry that she did not believe Cameron sexually abused A.M. because he "had a thing for teen aged girls" not young boys. (*Id*.). Instead, Moreland suspected Harrod's boyfriend as the culprit. (*Id*. at 3-4). Detective Curry informed Moreland that he would complete a written report of the interview and forward her concerns to LCCS for further consideration. (*Id*. at 4).

3

Cameron Garner did not appear for his scheduled interview. (*See* Doc. 36, Ex. H, Curry Rep.). When Detective Curry called the Garners for an explanation, Christina Garner informed him that she and Cameron had spoken with an attorney and that they no longer wished to speak to the detective. (*Id.*).

On March 8, 2012, Detective Curry met with Muskingum County Prosecutor Michael Haddox concerning A.M.'s sexual abuse allegations. (Doc. 60, Curry Depo. at 52). After Detective Curry reported his findings, Prosecutor Haddox decided to pursue charges against Cameron Garner, Christina Garner, and Audrey Moreland. (*Id.*). Haddox presented the case to the grand jury who returned indictments against Cameron Garner for two counts of Gross Sexual Imposition, and Christina Garner and Audrey Moreland for counts of Child Endangering. (*See* Doc. 1, Compl. at ¶ 42). Shortly thereafter, warrants were issued and all three individuals were arrested. (*Id.* at ¶¶ 43-44).

After the grand jury proceedings, Prosecutor Ron Welch took over as lead prosecutor on the case. (*See* Doc. 56, Welch Depo. at 45-46). He decided to voluntarily dismiss the Child Endangering charges against Christina Garner and Audrey Moreland shortly before trial. (*Id.*). The charges against Cameron Garner were also ultimately dismissed, following a determination by the presiding judge that A.M. was incompetent to testify, and that A.M.'s prior statements were hearsay and therefore inadmissible. (*See id.* at 45-49).

On July 12, 2013, Plaintiffs Christina Garner, Cameron Garner, J.D.G. (the Garners' minor son), Audrey Moreland, Charles Moreland, and Dreama Baker (of whom Audrey Moreland is a guardian) filed suit in this Court alleging claims against various parties involved in the investigation and prosecution of A.M.'s sexual abuse allegations. Specifically, Plaintiffs brought claims under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth

Amendments, as well as claims for defamation, malicious prosecution, false arrest, false imprisonment, gross negligence, negligent and intentional infliction of emotional distress, and loss of consortium against the following defendants: LCCS, the Licking County Board of Commissioners, Tim Bubb, Doug Smith, and Duane Flowers (the individual Licking County Commissioners), MCCS, the Muskingum County Board of Commissioners, Jerry Lavy, Jim Porter, and Todd Sands (the individual Muskingum County Commissioners), Jessica Harrod, Mindy Darst, Amy Reedy, Deputy Shawger, Detective Curry, Sheriff Matthew Lutz, Prosecutors Smith, Welch, and Haddox, and John/Jane Does 1-6. Defendants[2] then filed the pending Motion for Summary Judgment, arguing that they are entitled to judgment as a matter of law on all of Plaintiffs' claims.

## II. STANDARD OF REVIEW

Defendants bring this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In accordance with the Rule, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50.

---

[2] Defendant Jessica Harrod is the only named defendant who did not move for summary judgment. The Court will address Plaintiffs' claims against Harrod later in this Opinion.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

Finally, in considering the factual allegations and evidence presented in a motion for summary judgment, the Court acknowledges that it must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox*, 53 F.3d at 150.

### III.     DISCUSSION

Plaintiffs have alleged ten causes of action against Defendants in this case. Defendants argue that many of these claims should be dismissed as a matter of law. The Court will address each of Defendants' arguments in turn.

### A.     **Plaintiffs' Federal Claims**: **Violations of the Fourth, Eighth, and Fourteenth Amendments**

Plaintiffs' first cause of action is brought pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs assert that Defendants "showed intentional, outrageous, and reckless disregard for Plaintiffs' constitutional rights to be free from unlawful search, seizure, excessive force, excessive punishment, excessive bail, false arrest, false imprisonment, false incarceration and malicious prosecution." (Doc. 1, Compl. at ¶ 57).

As an initial matter, the Court finds that there are no factual allegations in the Complaint or evidence in the record demonstrating that (1) Defendants performed any kind of search affecting Plaintiffs or (2) Defendants used excessive force at any point during Plaintiffs' arrest.  Further, it is the court—not the prosecutors, detectives, deputies, or caseworkers—that possesses the authority to set bail and impose punishment.  As such, Defendants may not be held liable for the setting of bail and the imposition of punishment over which they exercise no control.  Therefore, to the extent Plaintiffs' Complaint alleges claims of unlawful search, excessive force, excessive punishment, and excessive bail, Defendants' Motion for Summary Judgment is **GRANTED**.  The Court will discuss the remaining federal causes of action, i.e., malicious prosecution, false arrest, and false imprisonment in more detail below.

### 1.    Individual Defendants

Generally, to maintain a claim under 42 U.S.C. § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) [that] the deprivation was caused by a person acting under color of state law." *Savoie v. Martin*, 673 F.3d 488, 493-94 (6th Cir. 2012) (quoting *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).  Neither party refutes the second element, so the Court will limit its discussion to the first, i.e., whether Defendants deprived Plaintiffs of a protected right.

The parties' motion and responsive memoranda address this issue by discussing the merits of each of Plaintiffs' federal tort claims.  The Court will present its analysis in a similar framework.

### a.    Malicious Prosecution

In their Complaint, Plaintiffs argue that Defendants initiated criminal proceedings against them without probable cause, thereby violating their constitutional rights.  In support of dismissal,

Defendants contend that they had probable cause to initiate and pursue criminal charges against Cameron Garner, Christina Garner, and Audrey Moreland.

To sustain a federal malicious prosecution claim under § 1983, a plaintiff must demonstrate that "(1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Davis v. Butler Cnty. Sheriff*, No. 1:14-CV-804, 2014 WL 6910106, at *3 (S.D. Ohio Dec. 8, 2014) (Black, J.) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)). In their Motion to Dismiss, Defendants address only the first and second elements, i.e., the involvement and probable cause requirements. Because the Court finds the probable cause element to be dispositive, the Court will address it first.

Probable cause has been defined as "'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged.'" *Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 497 (6th Cir. 2008) (quoting *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005)). In simple terms, probable cause is "a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Because this standard is lower than that required for a conviction, "not every failed criminal prosecution will sustain a subsequent malicious-prosecution suit." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (quoting *Harris,* 422 F.3d at 327). Finally, and pertinent to this case, "[u]nder federal law, the return of an indictment 'conclusively determines the existence of probable cause' as to a malicious prosecution claim brought under 42 U.S.C. § 1983." *Dovell v. The Guernsey Bank*,

8

373 B.R. 533, 539 (S.D. Ohio 2007) (Sargus, J.) (quoting *Barnes v. Wright,* 449 F.3d 709, 716

(6th Cir. 2006)); *see also Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) ("[I]t has long

been settled that the finding of an indictment, fair upon its face, by a properly constituted grand

jury, conclusively determines the existence of probable cause for the purpose of holding the

accused to answer.") (internal quotations and citations omitted).

　When Detective Curry completed his investigation, he met with prosecutors from the

Muskingum County Prosecutor's Office to report his findings.  Prosecutors Haddox and Welch

reviewed the evidence—including (1) A.M.'s statements to both Harrod and Reedy identifying

"Pop Pop" or "Pap" (A.M.'s confirmed nickname for Cameron Garner), as the individual who

sexually abused him, and (2) Moreland's statement admitting that she had brought A.M. to the

Garner residence despite Harrod's objections and knowledge of Cameron Garner's status as a

sex offender—and decided to present the case to a grand jury.  In March 2012, the grand jury

returned a four-count indictment, charging Cameron Garner with two counts of Gross Sexual

Imposition, and Christina Garner and Audrey Moreland each with one count of Child

Endangering.  (*See* Doc. 50, Ex. 2, Indictment).  This, the Court finds, demonstrates a finding of

probable cause sufficient to defeat Plaintiffs' malicious prosecution claim.

　Plaintiffs argue that they should be able to sustain their claim despite the grand jury

indictment because Defendants presented "a case that had not been properly investigated" to the

grand jury, relying solely on "incomplete, inaccurate, and unreliable evidence."  (Doc. 46, Resp.

at 14).  It appears as though Detective Curry's failure to investigate other potential suspects, such

as Harrod's boyfriend, serves as the crux of Plaintiffs' argument.  But as stated above, "[i]n the

federal context, an indictment 'fair on its face' conclusively determines the existence of probable

cause."  *LeFever v. Ferguson*, 956 F.Supp.2d 819, 838 (S.D. Ohio 2013) (Frost, J.).  Thus,

"[a]bsent evidence of perjured testimony or irregularity in the grand jury proceeding so as to indicate that the indictment was somehow tainted, there is a conclusive presumption that probable cause supported the prosecution." *Id.* Here, Plaintiffs have presented no evidence indicating that the grand jury proceeding was procedurally irregular or that any of the Defendants falsely testified or misrepresented information they had garnered during their investigation to the grand jury.[3]

Moreover, the fact that Detective Curry did not investigate the case as exhaustively as Plaintiffs would have preferred does not destroy the probable cause presumption. Otherwise stated, mere dissatisfaction with the thoroughness of a detective's investigation is insufficient to rebut a grand jury's finding; instead, a plaintiff must present evidence of perjured testimony or some irregularity in the grand jury proceeding itself. *See id.* Plaintiffs have done neither. First, it is unclear whether Detective Curry even testified before the grand jury. Second, there is no indication that the grand jury was commenced, conducted, or closed irregularly. Finally, there is no evidence that Detective Curry intentionally omitted exculpatory information from his report or presentation to the prosecutors or grand jury. His written report, which included information about Harrod's boyfriend as well as Moreland's concerns about the truthfulness of the allegations, demonstrates the contrary.

Because Plaintiffs have failed to present any evidence of perjured testimony or irregularity in the proceeding to rebut the grand jury's finding, the Court finds Defendants had probable cause to initiate criminal proceedings against Cameron Garner, Christina Garner, and Audrey Moreland. Defendants' Motion for Summary Judgment is therefore **GRANTED** with respect to Plaintiffs' federal malicious prosecution claim.

---

[3] In fact, Plaintiffs have failed to specify which of the Defendants, if any, provided testimony during the grand jury proceeding.

### b.    False Arrest and Imprisonment

As the basis for their false arrest and false imprisonment claims, Plaintiffs assert that "Defendants detained Plaintiffs and imprisoned them with no probable cause or in reckless and wanton disregard for whether probable cause existed." (Doc. 1, Compl. at ¶ 76). In opposition, Defendants again argue that they had probable cause to arrest and detain Cameron Garner, Christina Garner, and Audrey Moreland based on a valid arrest warrant and the information they had obtained during their investigation of A.M.'s sexual abuse allegations.

Like federal malicious prosecution claims, § 1983 claims of false imprisonment and false arrest "also 'turn[ ] on the question of probable cause' and resolution of criminal proceedings in plaintiff's favor." *Fannon v. Patterson*, No. 3:13-CV-14, 2014 WL 4273337, at *3 (S.D. Ohio Aug. 29, 2014) (Newman, J.) (quoting *Gorcaj v. Medulla*, 51 F. App'x 158, 159 (6th Cir. 2002)). As such, "a false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). Because the issuance of a warrant generally represents a finding of probable cause, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Id*. The only way in which a plaintiff can overcome this "complete defense," i.e., the existence of a facially valid warrant, is by demonstrating that in order to procure the warrant, the defendants "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)).

11

Plaintiffs do not contest that their arrests were made pursuant to facially valid warrants. (*See* Doc. 1, Compl. at ¶ 43, 44).  Instead, they argue the aforementioned exception should apply because the determination of probable cause was "based upon an unreliable, biased and false report, which Defendants knew, or should have known, was unreliable, biased and false."  (*Id.* at ¶ 77).  The Court finds Plaintiffs' argument unpersuasive.  First, it is unclear to what "report" Plaintiffs refer; but regardless, the arrest warrants were issued pursuant to the grand jury indictment, not based on any one report.  Second, it is unclear who testified during the grand jury proceeding, what evidence was submitted for consideration, or how much value the jurors placed on any one individual's testimony or report.  Third, even if the grand jury was presented with the findings of Detective Curry's investigation and Amy Reedy's interview, Plaintiffs have provided no evidence showing that Reedy or Detective Curry presented false or biased testimony to the grand jury. [4] Finally, the Court emphasizes that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Based on this standard, the Court finds that even if there may have been another possible suspect or some doubt as to the truthfulness of the allegations, probable cause to arrest Plaintiffs nonetheless existed based on A.M.'s statements to his mother and Reedy and the supplemental information obtained during Detective Curry's investigation.

---

[4] Plaintiffs would have preferred A.M.'s interview to have been recorded, of longer duration, and overseen by Detective Curry.  They also would have preferred Detective Curry to investigate Harrod's boyfriend.  But there is no evidence in the record showing that Reedy lied about recording her interview, or any other aspect of A.M.'s interview, to the grand jury.  Likewise, there is no evidence that Detective Curry completely omitted all references to Harrod's boyfriend or the possibility of other suspects to the grand jury.  (To the contrary, if his report was submitted to the grand jury, which Plaintiffs appear to infer, the jurors were aware of Moreland's concerns and Harrod's boyfriend's interactions with A.M.).  Thus, although these measures may have been prudent, the absence of them does not invalidate the arrest warrant issued pursuant to the grand jury's indictment; the grand jury was able to, and presumably did, weigh these very concerns, i.e., A.M.'s age, Reedy's decision not to record A.M.'s interview, the relatively short duration of the interview, and Detective Curry's failure to conduct further investigation of the matter, during its deliberations.  Nonetheless, despite these issues, the grand jury found that sufficient credible evidence supported a finding of probable cause.

For these reasons, the Court finds Plaintiffs were arrested pursuant to valid arrest warrants supported by probable cause.  As such, Defendants are entitled to judgment as a matter of law as to Plaintiffs' false arrest and false imprisonment claims.

Because the Court grants Defendants' motion as to Plaintiffs' malicious prosecution, false arrest, and false imprisonment claims on probable cause grounds, the Court need not address Defendants' absolute immunity arguments.

### 2.    Entity Defendants

Plaintiffs also assert a § 1983 claim against the entity Defendants (Licking County Children Services, Licking County Board of Commissioners, Muskingum County Children Services, and Muskingum County Board of Commissioners).  Specifically, Plaintiffs allege that these Defendants "authorized, tolerated, ratified, committed or acquiesced in the acts of [the individual] Defendants,  and in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to the individuals such as Plaintiffs."   (Doc. 1, Compl. at ¶ 60).

In the seminal case of *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978), the Supreme Court determined that municipalities and other government agencies qualify as "persons" under § 1983, thereby allowing plaintiffs to bring suit against these entities for alleged constitutional violations.  To prevail on a § 1983 municipal liability claim, often referred to as a *Monell* claim, a plaintiff must establish that (1) his or her constitutional rights were violated and (2) "a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights."  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010).  Importantly, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  As such, an agency cannot be held liable for the actions of its individual employees on *respondeat superior* or vicarious liability theories;

13

rather, liability attaches only when the entity's "policy or custom causes the constitutional violation in question." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Before addressing the issue of causation, the Court must determine whether Plaintiffs have alleged a cognizable constitutional violation. For reasons explained in detail above, Plaintiffs cannot rely on their malicious prosecution, false arrest, or false imprisonment claims as the basis of their *Monell* claim because probable cause supported Defendants' actions in investigating, arresting, and prosecuting Plaintiffs. But Plaintiffs argue that this conclusion should not end the Court's analysis. Rather, they assert that regardless of the Court's probable cause determination and the outcome of their Fourth Amendment claims, they have nonetheless pled a violation of their due process rights, which may serve as the basis of their § 1983 *Monell* claim. (*See* Doc. 46, Resp. at 5-9).

It is unclear from their pleadings whether Plaintiffs intended to plead a procedural or substantive due process claim. To afford Plaintiffs every favor, the Court will address both.

### a.     **Procedural Due Process**

To sustain a procedural due process claim under § 1983, a plaintiff must allege three elements: "(1) that they have a life, liberty or property interest protected by the Due Process Clause; (2) that this interest was deprived within the meaning of the Due Process Clause; and (3) that the state did not afford them adequate procedures prior to depriving them of their protected interest." *Berridge v. Heiser*, 993 F. Supp. 1136, 1141-42 (S.D. Ohio 1997) (Kinneary, J.). "Thus, to prevail on its procedural due process claim, the plaintiffs must prove that they had a definite liberty or property interest and that such interest was abridged without appropriate process." *Farmer v. Pike Cnty. Agr. Soc'y*, 411 F. Supp. 2d 838, 842 (S.D. Ohio 2005) (Smith, J.).

The Court must first address the threshold issue of whether Plaintiffs have sufficiently pled a constitutionally protected liberty or property interest.  Plaintiffs fail to specify—in either their Complaint or Response—the particular constitutional guarantee that allegedly forms the basis of their due process claim.[5]  After reviewing their pleadings and memoranda, Plaintiffs' claim centers on their dissatisfaction with Reedy's interview techniques and Detective Curry's investigation.  The Court construes the claims to allege some type of liberty or property right in the way in which Reedy and Detective Curry investigated A.M.'s sexual abuse allegations.

As a general rule, a plaintiff does not have a constitutional or statutory right in the manner in which a criminal investigation is conducted.  *Stuart v. McMurdie*, No. CV-10-00044-PHX-ROS, 2010 WL 1759448, at *4 (D. Ariz. Apr. 30, 2010).  It is true that there exists a constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).  But as noted above in Section A.1, Plaintiffs have not produced any evidence or pled any facts indicating that Defendants' investigation was tainted by deliberate wrongdoing or the intentional falsification of evidence.  Specifically, there are no facts in the record indicating that (1) the individual Defendants "deliberately fabricated" evidence or (2) the entity Defendants' policy failures somehow led to investigations or prosecutions pursued in bad faith.  As such, the Court finds Plaintiffs have failed to create any genuine issue of material fact exist as to whether Defendants violated their right to be free from prosecution on the basis of intentionally falsified evidence.

---

[5] Plaintiffs instead focus a majority of their discussion on the myriad of Defendants' alleged policy failures.  While these policy failures are certainly relevant to the deprivation and causation elements of their due process/*Monell* claim, they do not, in and of themselves, establish any affirmative constitutional rights.  Simply stated, Plaintiffs must establish a constitutionally protected right before they can argue one was deprived by Defendants' policy failures.

15

Moreover, and specifically relevant to this case, "there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way." *Devereaux*, 263 F.3d at 1075; *see also Merrill v. Golik*, No. C12-5674 KLS, 2013 WL 5176844, at \*6 (W.D. Wash. Sept. 13, 2013) ("[A]n allegation of improper interview techniques . . . without more, is not a constitutionally viable claim."); *Ward v. Bolek*, No. 3:12-CV-00136-SI, 2013 WL 145828, at \*9 (D. Or. Jan. 14, 2013) ("Conducting interviews and insinuating that [Defendant] had engaged in improper conduct during those interviews does not implicate a well-established statutory or constitutional right."). As one Court of Appeals explained:

> Interviewers of child witnesses of suspected sexual abuse must be given some latitude in determining when to credit witnesses' denials and when to discount them, and we are not aware of any federal law—constitutional, decisional, or statutory—that indicates precisely where the line must be drawn. . . . Consequently, mere allegations that Defendants used interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983.

*Devereaux*, 263 F.3d at 1075 (internal citations omitted).

While the Court recognizes that these cases are not controlling, it nonetheless finds them to be factually similar, well-reasoned, and persuasive. Thus, to the extent Plaintiffs seek to base their claim on Defendants' failure to record A.M.'s interview, conduct A.M.'s interview at a specific location, or pursue other leads, the Court agrees with the case law above and finds that Plaintiffs did not have a protected constitutional right to dictate exactly how and where A.M. was interviewed or the specific parameters of Detective Curry's investigation. Because Plaintiffs have not sufficiently alleged a cognizable constitutionally protected property or liberty interest, the Court finds that Plaintiffs cannot rest their *Monell* claim on a violation of procedural due process.

### b.      Substantive Due Process

Substantive due process "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (internal quotations omitted).  To state a substantive due process violation, a plaintiff must allege a state actor either (1) deprived them of a particular constitutional guarantee or (2) acted in a manner that "shocks the conscience." *Teets v. Cuyahoga Cnty., Ohio*, 460 F. App'x 498, 502 (6th Cir. 2012); *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997).  "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Valot*, 107 F.3d at 1228 (citations omitted).

The Court finds Plaintiffs cannot sustain a substantive due process claim under either of these two theories.  First, as explained in detail above, Plaintiffs have failed to allege any cognizable constitutional interest—and without a protected interest, there can be no wrongful deprivation.  Second, Plaintiffs have failed to allege the "egregious" and "conscience shocking" behavior required to satisfy the second theory.  *See Bowers v. City of Flint*, 325 F.3d 758, 767 (6th Cir. 2003) (defendants must engage in conduct that "shocks the conscience" and is "so egregious that it can be said to be arbitrary in the constitutional sense" to violate substantive due process).  To the contrary, all of Detective Curry and caseworker Reedy's actions were rationally related to, and done in furtherance of, the state's legitimate interest in protecting A.M and the community as a whole from criminal activity.  The record demonstrates that Reedy, a seasoned LCCS caseworker, interviewed A.M. about his sexual abuse allegations in accordance with her

17

training and experience.  There is no evidence indicating she influenced or manipulated A.M. during their discussion, nor is there any evidence she lied or omitted important details from her report.  Concerning Detective Curry's actions, the record shows that Detective Curry reviewed Reedy's and Deputy Shawger's report, talked with A.M.'s mother, interviewed Audrey Moreland, and attempted to interview Christina and Cameron Garner.  There is no evidence that he misrepresented his findings in his report, to the prosecutors, or to the grand jury. Nor is there any indication that he presented false testimony, omitted important facts, or otherwise lied about his investigation.

Based on this record, the Court finds the actions of caseworker Reedy and Detective Curry were far from egregious and arbitrary.  While in hindsight it may have been prudent to record A.M.'s interview and/or interview other possible suspects, Defendants' failure to do so was not "conscience shocking."  This conclusion is consistent with the decisions of other courts that have confronted similar, if not worse, investigations.  *See Palmer v. Adams*, 517 F. App'x 308, 310-11 (6th Cir. 2013) (officials' failure to interview certain witnesses, to consider the results of victim's medical examination, and to weigh statements made to victim's therapist during child abuse investigation was not "shocking" enough to form basis of due process claim); *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009) (detectives' failure to investigate other leads and explore inconsistencies in the physical evidence of criminal investigation was not "conscience-shocking misconduct"); *Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir. 2007) (investigator's misrepresentations during the course of her investigation and failure to interview certain individuals were insufficient to establish due process violation); *Edwards v. Williams*, 170 F. Supp. 2d 727, 734 (E.D. Ky. 2001) (detective's failure to videotape victim's interview

and his use of "improper, leading, and prejudicial interview technique[s]" during child abuse investigation did not rise to the level of a constitutional violation).

For these reasons, the Court finds Plaintiffs' have not alleged any constitutional violations—whether under the theory of malicious prosecution, false arrest, false imprisonment, procedural due process, or substantive due process—on which to base their *Monell* claim. Defendants' Motion for Summary Judgment as to the § 1983 claims against Licking County Children Services, Licking County Board of Commissioners, Muskingum County Children Services, and Muskingum County Board of Commissioners is therefore **GRANTED**.

**B.      Plaintiffs' State Law Claims**

Defendants argue that they are entitled to judgment as a matter of law on all of Plaintiffs' state law claims because they are statutorily immune from suit pursuant to Ohio Revised Code Sections 2744.02 and 2151.421(G)(1)(a). Defendants also argue that even if the Court finds they are not entitled to immunity, Plaintiffs' claims still fail on their merits. In opposition, Plaintiffs contest both of these assertions.

The Court finds a discussion of the various statutory bases, requirements, and variations of Ohio's immunity provisions unnecessary as even if Defendants were not protected by the statutes cited above, they would nonetheless be entitled to judgment on the merits of all of Plaintiffs' state law claims. The reasons supporting this conclusion are set forth below.

**1.      Malicious Prosecution, False Arrest, and False Imprisonment**

In their Complaint, Plaintiffs allege state law claims for malicious prosecution, false arrest, and false imprisonment—all of which are based on the same premise as their federal tort claims, i.e., that "Defendants did not have probable cause to believe that Plaintiffs had committed any type of crime" and that they relied on "misleading, inaccurate and biased

19

information" in prosecuting, arresting, and imprisoning Plaintiffs.  (Doc. 1, Compl. at ¶ 70; *see also id.* at ¶¶ 76-77).

However, the Court has already determined, based on the grand jury indictment, arrest warrant, and the information obtained during the criminal investigation of A.M.'s sexual abuse allegations, that probable cause existed to prosecute, arrest, and detain Cameron Garner, Christina Garner, and Audrey Moreland.  *See* Section A(1)(a)-(b), *supra*.  The Court has also found that Plaintiffs have provided no evidence showing that Defendants lied or otherwise presented inaccurate information to the grand jury which would have tainted the indictment or arrest warrant.  *See id.*  Accordingly, for the same reasons set forth in detail in Section A(1)(a) and (b), the Court finds Defendants' motion well-taken with respect to Plaintiffs' state law malicious prosecution, false arrest, and false imprisonment claims.  Counts Three and Four of Plaintiffs' Complaint are therefore **DISMISSED**.

**2.     Defamation**

In their Complaint, Plaintiffs generally allege that "Defendants' statements accusing Plaintiffs of wrong-doing" were made with "reckless disregard for the truth or falsity of the statements" and in turn caused Plaintiffs "extreme humiliation" and "other psychological, mental, economic, and emotional damages."  (*See* Doc. 1, Compl. at ¶¶ 63, 67).  Defendants ask the Court to dismiss this claim because (1) any communications made by Defendants were substantially true; and (2) regardless of their truthfulness, all of Defendants' communications were privileged.  Plaintiffs offered no argument in opposition.

Under Ohio law, to sustain a claim for defamation, a plaintiff must establish "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and

(5) that the defendant acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012) (quoting *Pollock v. Rashid*, 117 690 N.E.2d 903 (Ohio Ct. App. 1996); *see also Kerr v. Hurd*, 694 F. Supp. 2d 817, 830 (S.D. Ohio 2010) (Merz, J.) (reviewing elements of defamation claim in Ohio). "Because the determination of whether words are defamatory is a question of law, summary judgment is appropriate in defamation actions." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Brown v. Lawson*, 863 N.E.2d 215, 219 (Ohio Ct. App. 2006)).

Defendants first argue that Plaintiffs cannot establish the falsity of any statements made. The Court agrees. First, the Court notes that Plaintiffs have failed to plead the allegedly defamatory statements with any degree of specificity, thereby precluding the Court from evaluating the Defendants' comments on a statement-by-statement basis.[6] Instead, Plaintiffs generally point to "Defendants' statements accusing Plaintiffs of wrong-doing" as the basis of their claim. (*See* Doc. 1, Compl. at ¶ 63). The Court assumes, then, that Plaintiffs are referring to statements made about Cameron Garner, Christina Garner, and Audrey Moreland during the course of the criminal investigation and prosecution of A.M.'s sexual abuse allegations. However, there is no evidence in the record that any of the detectives, deputies, caseworkers, or prosecutors involved in the investigation and prosecution of this matter falsely testified, falsely reported the findings of their investigation, or otherwise made false statements to the court, grand jury, or any other individuals involved in the case. That charges against Cameron Garner, Christina Garner, and Audrey Moreland were ultimately dismissed does not retroactively render all of the statements made during the Defendants' investigation false or defamatory. To the

---

[6] Plaintiffs have not indicated the substance, context, or timing of the allegedly defamatory comments, nor have they made clear exactly which Defendant is accused of making these statements and to whom they were allegedly spoken. (*See* Doc. 50, Cam. Garner Depo. at 51 (stating that he could not recall or specify any defamatory statements made by the Muskingum County Sheriff's Office, Prosecutor's Office, or Children Services Agency)). As stated earlier, Plaintiffs elected not to clarify this issue in their Response.

contrary, in reviewing the record the Court finds that the deputies', detectives', and caseworker's reports and testimony all appear consistent with each other and with the statements given by Harrod and A.M.  (*See* Doc. 36, Ex. D, Shawger Rep.; Ex E, Reedy Rep.; Ex. F, G, H, I, Curry Reps.; Doc. 58, Reedy Depo. at 108-47; Doc. 59, Shawger Depo. at 5-19; Doc. 60, Curry Depo. at 35-81; Doc. 56, Welch Depo. at 31-51; Doc. 54, Haddox Depo. at 25-42).

Plaintiffs have not explained which statements they believe to be false, why they believe them to be false, or when and by whom these statements were allegedly made.[7]  As such, the Court finds no genuine issue of material fact exists as to the defamatory nature of the statements made by the detectives, deputies, prosecutors, and caseworkers in investigating A.M.'s sexual abuse allegations.[8]  Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Count Two.

### 3.    Intentional Infliction of Emotional Distress

Plaintiffs next allege that Defendants intentionally caused them emotional distress by conducting a "reckless and wanton" investigation, which resulted in "constant fear of being arrested based upon false allegations and extreme mistrust and fear of police officials."  (Doc. 1, Compl. at ¶ 89, 92).  In their motion, Defendants argue this claim should be dismissed because the record is devoid of any facts or evidence showing that their conduct was intentional, extreme, or outrageous.

Under Ohio law, Plaintiffs must satisfy the following elements to maintain a claim for intentional infliction of emotional distress: "(1) Defendants intended to cause emotional distress, or knew or should have known that their actions would result in Plaintiffs' serious emotional

---

[7] The Court notes that although it has reviewed all evidence in the record relevant to the pending motion, it is the affirmative burden of Plaintiffs to "direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *Cox v. Dubois*, 16 F. Supp. 2d 861, 865 (S.D. Ohio 1998) (Marbley, J.).
[8] Based on this finding, the Court need not address Defendants' secondary argument concerning privilege.

distress, (2) Defendants' conduct was extreme and outrageous, (3) Defendants' actions proximately caused Plaintiffs' emotional injury, and (4) Plaintiffs suffered serious emotional anguish." *Ponder v. Bank of Am., N.A.*, No. 1:10-CV-00081, 2011 WL 8307207, at *7 (S.D. Ohio Mar. 8, 2011) (Dlott, J.) (citing *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995)). Defendants focus primarily on the second element: the requirement that the complained-of conduct was "extreme and outrageous."

> Ohio courts have delineated the bounds of "extreme and outrageous" conduct as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).  Accordingly, a claim for IIED must be based on more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Harsh v. Franklin*, No. 24331, 2011 WL 2089198, at *3 (Ohio Ct. App. May 20, 2011) (quoting *Yeager*, 453 N.E.2d at 671).  Further, as a general rule, individuals cannot be held liable for IIED for performing an act they "were legally entitled to perform." *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 714 (Ohio Ct. App. 2009); *see also Scott v. Spearman*, 684 N.E.2d 708, 712 (Ohio Ct. App. 1996) (holding that a "legally sanctioned act" could not give rise to an IIED claim).  Finally, the Court notes that whether an individual's conduct rises to the level of "extreme and outrageous" is a matter of law

that may be properly decided on summary judgment. *Morrow*, 915 N.E.2d at 714 ("Whether conduct is 'extreme and outrageous' is initially a question of law for the court.").

In their response, Plaintiffs argue that Defendants' conduct in "bringing false charges resulting from a clear failure to properly investigate allegations of molestation and the willful ignoring of conflicting, contradictory, and potentially exculpatory evidence" qualified as extreme and outrageous conduct. (Doc. 46, Resp. at 28). The Court disagrees. First, Defendants were legally charged to investigate A.M.'s sexual abuse allegations, bring charges against Plaintiffs, and present the case to a grand jury. As discussed above, these "legally sanctioned acts," cannot form the basis of liability for an IIED claim. *See id.*; *Scott*, 684 N.E.2d at 712. Second, the Court finds Defendants' investigation was not so deficient as to be considered "utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671. Deputy Shawger completed a detailed intake report and referred the case to Detective Curry and Children Services; Amy Reedy, a licensed, well-trained LCCS caseworker interviewed the victim and found his statements to be believable and largely consistent with his prior allegations; Detective Curry reviewed Deputy Shawger's and Amy Reedy's reports, had further discussions with Harrod, interviewed Audrey Moreland, and attempted to interview Cameron and Christina Garner; Prosecutors Welch and Haddox reviewed this evidence, and decided to present the case to a grand jury. This conduct was not outrageous, but pursued in accordance with these individual's professional duties as deputies, caseworkers, detectives, and prosecutors, charged with the protection of A.M. and the community as a whole. Third, there is no evidence in the record that any of the Defendants "willful[lly] ignor[ed]" conflicting, contradictory, and potentially exculpatory evidence." [9] In fact, Deputy Shawger,

---

[9] Plaintiffs dwell on the fact that Detective Curry opted not to interview Harrod's boyfriend. While it may have been sensible for Detective Curry to talk with this individual, the Court finds that his failure to do so does not rise to the level of "extreme and outrageous" behavior. Aside from Moreland's unsubstantiated suspicions, there was no indication that Harrod's boyfriend had sexually molested A.M. To the contrary, A.M. expressly told Reedy that no one besides "Pap" had touched him inappropriately. (*See* Doc. 36, Ex. E, Reedy Rep.).

Amy Reedy, and Detective Curry all explicitly noted information and statements that were not entirely consistent with their theory of the case.  (*See* Doc. 36, Ex. D, Shawger Rep. (noting that A.M. had been exposed to Harrod's boyfriend's penis before); Ex. E, Reedy Rep. (reporting that A.M. stated that his penis had been touched with a pencil); Ex. G, Curry Rep. (noting Moreland's disbelief of allegations and suspicions of Harrod's boyfriend)).  Nonetheless, based on the totality of the evidence derived from Defendants' investigation, a grand jury found that probable cause existed to indict and arrest Cameron Garner, Christina Garner, and Audrey Moreland.

The Court does not doubt that Plaintiffs suffered emotional stress from being indicted on such serious criminal charges.  But Defendants had an obligation to investigate the reported sexual assault of a 4-year-old child, and they did just that.  The investigation certainly was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671.  Accordingly, because Defendants' conduct did not constitute "extreme and outrageous" behavior, the Court finds they cannot be liable for intentionally inflicting emotional harm on Plaintiffs.  Defendants' Motion for Summary Judgment as it pertains to Plaintiffs' IIED claim (Count Seven) is therefore **GRANTED**.

### 4.    Negligent Infliction of Emotional Distress

As the basis for their negligent infliction of emotional distress claim, Plaintiffs allege the following:

- Defendants' acts and/or acts sanctioned, ratified, and/or recklessly and wantonly condoned by Defendants caused serious emotional distress to Plaintiffs.

- Defendants' acts and/or acts sanctioned, ratified, and/or recklessly and wantonly condoned by Defendants caused Plaintiffs to experience intense fear of physical consequences to their own person.

- Defendants unjustifiably relied upon false allegations and failed to conduct an even-handed investigation.

(Doc. 1, Compl. at ¶¶ 85-87).  In their motion, Defendants argue Plaintiffs' claim should be dismissed because they "did not cause Plaintiffs physical injury or place them in physical peril," which are essential elements of an NIED claim.  (Doc. 36, Mot. Summ. J. at 28).  In response, Plaintiffs contend that even though they may not have suffered physical harm, manifestation of a physical injury is no longer required to sustain an NIED claim under Ohio law.

While the Court agrees with Plaintiffs' general proposition that in Ohio, resultant physical injury is not required to maintain an NIED cause of action, *see Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983), the Court disagrees that the facts of this case support such a claim here.  "Ohio recognizes the tort of negligent infliction of emotional distress in essentially two instances, namely when an individual was a bystander to a serious accident or was in fear of physical injury to herself."[10] *Snyder v. United States*, 990 F. Supp. 2d 818, 833 (S.D. Ohio) (Spiegel, J.) *aff'd*, 590 F. App'x 505 (6th Cir. 2014).  Plaintiffs ground their claim on the second circumstance: an alleged "intense fear of physical consequences."  (*See* Doc. 1, Compl. at ¶ 86).  To prevail on an NIED claim on this basis, Plaintiffs must show more than "fear of a nonexistent physical peril."  *Heiner*, 652 N.E.2d at 670.  Instead, Plaintiffs must have been "aware of real physical danger to himself or another."  *Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008).

---

[10] When read naturally, this disjunctive phrase seems to stand for the premise that plaintiffs could bring an NIED claim if they were *either* bystanders to an accident *or* in fear of physical peril.  But, the Court notes that there is some authority suggesting that one *must* be a bystander to prevail on an NIED claim.  *See, e.g.*, *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995) (discussing Ohio case law and holding that "recovery for negligent infliction of emotional distress has been limited to instances where the plaintiff was a bystander to an accident").  This apparent contradiction is of no consequence in this case, though, as Plaintiffs have not alleged facts supporting either basis, i.e., that they were bystanders to a traumatic event or in fear of physical peril.

The Court finds that Plaintiffs have failed to present any facts evincing that they faced any "real physical danger" as a result of Defendants' actions. In their response, Plaintiffs detailed the emotional stress they suffered as a result of A.M.'s sexual abuse allegations, the ensuing investigation, and their ultimate arrest and detainment. However, Plaintiffs have offered no explanation or basis in fact as to how the Defendants' conduct put them in any kind of physical peril. To the extent Plaintiffs' claim could remotely be interpreted as arguing that a lawful arrest and imprisonment qualify as such "physical danger," the Court remains unpersuaded. In *Snyder*, this Court rejected a similar argument, and in doing so explained:

> The "actual physical peril" of which Plaintiff complains is being "handcuffed, arrested, imprisoned, subjected to a cavity search, not provided food, water or her medication for several hours" . . . . [These events] are part of the standard procedure followed by law enforcement when an individual is taken into custody. No "peril" is involved—indeed, quite the opposite, as these practices are designed to protect law enforcement from those being arrested and those arrested from others taken into custody. Were we to accept Plaintiff's premise, every individual arrested and then released based on a mistaken identity would state a claim for negligent infliction of emotional distress.

*Snyder*, 990 F. Supp. 2d at 834.

Plaintiffs were not bystanders to any traumatic occurrence or otherwise placed in fear for their physical safety as a result of Defendants' conduct. For these reasons, the Court finds Plaintiffs cannot sustain their NIED cause of action. Defendants' Motion for Summary Judgment is therefore **GRANTED** with respect to Count Six of the Complaint.

### 5. Gross Negligence

In Count Five of the Complaint, Plaintiffs allege a claim for gross negligence, based on the Defendants' negligent and reckless disregard of certain fundamental rights. However, the fundamental "rights" on which Plaintiffs base their claim are premised entirely on Plaintiffs' IIED, NIED, malicious prosecution, unlawful search and seizure, excessive force, false arrest, false imprisonment, and defamation claims. (*See* Doc. 1, Compl. at ¶ 82). The Court has, for

reasons stated above, dismissed all of these underlying claims on their merits. Therefore, because no legal or factual basis for Plaintiffs' gross negligence claim exists, the Court finds dismissal appropriate. Count Five of Plaintiffs' Complaint is accordingly **DISMISSED**.

### 6. Loss of Consortium

In Counts Eight, Nine, and Ten of the Complaint, Plaintiffs allege claims for loss of consortium on behalf of Charles Moreland (husband of Audrey Moreland), J.D.G. (minor son of Cameron and Christina Garner), and Dreama Baker (a ward under the guardianship of Audrey Moreland). Defendants argue that these claims should be dismissed as they "are merely derivative to the claims of Cameron Garner, Christina Garner, and Audrey Moreland"—all of which have already been dismissed. (Doc. 36, Mot. Summ. J. at 29).

The Court agrees. Although an individual's claim for loss of consortium is "a separate and distinct cause of action" from the underlying tort claim asserted by the individual's spouse or parent, "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 585 N.E.2d 384, 392 (Ohio 1992). Otherwise stated, one cannot recover damages for loss of consortium "if there is no cognizable claim under Ohio law that would be available to the injured spouse." *Gillum v. Fairgreens Country Club*, 673 N.E.2d 637, 642-43 (Ohio Ct. App. 1996).

For reasons explained in detail above, Plaintiffs have not shown that Defendants acted unlawfully or committed any tort against them. Because Plaintiffs have failed to allege any cognizable claims against Defendants under either state or federal law, the Court finds the loss of consortium claims of Charles Moreland, J.D.G. and Dreama Baker (Counts Eight, Nine, and Ten) must also be dismissed.

## C.     Claims against Defendant Jessica Harrod

Plaintiffs have also alleged claims against Defendant Jessica Harrod, mother of A.M.

Plaintiffs' Complaint does not specify which causes of action are directed specifically against

Harrod.  It is undisputed, however, that Harrod is a private citizen, unaffiliated with any

government agency.  Therefore, Plaintiffs cannot maintain a § 1983 cause of action against her,

as such a claim requires that the defendant acted "under color of state law." *Savoie v. Martin*,

673 F.3d 488, 493-94 (6th Cir. 2012).[11]  Accordingly, the only legally plausible claims alleged

against Harrod in the Complaint are Plaintiffs' state law causes of action.

For reasons explained earlier in this Opinion, the Court has dismissed all claims against

all of the other named defendants in this case.  As such, the only causes of action that remain

pending before the Court are Plaintiffs' state law claims against Harrod.  However, the Court

declines to exercise supplemental jurisdiction over these remaining state law claims, as all

federal claims have been resolved and no federal interest would be served in so doing.

All claims against Defendant Harrod are therefore **DISMISSED** without prejudice.

## IV.    CONCLUSION

For reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary

Judgment.  (ECF No. 36.)  The Court declines to exercise supplemental jurisdiction over the state

law claims against Defendant Herrod, and therefore **DISMISSES** without prejudice those

claims.

---

[11] The Court acknowledges that in certain circumstances, a private party may be liable under § 1983, specifically if the private actor "willfully participate[d] in joint action with state agents."  *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).  Otherwise stated, a plaintiff may bring a civil conspiracy claim under § 1983 against a private individual if the individual conspired with the state to deprive plaintiff of his or her federally protected rights.  *See id.*; *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989).  But Plaintiffs have not alleged any facts or legal basis to support such a claim here. Moreover, the Court has dismissed Plaintiffs' federal claims against all of the state actors and government agencies involved in this case.

The Clerk shall enter judgment in favor of Defendant and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**


_9 - 30 - 2015_
**DATE**

**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT COURT**